USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/22/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

DWAYNE BARNES,

                Plaintiff,

-v-

M. ABDULLAH, A.M. ICEARI, D. LANE,
DR. BOHPOLEE and B. KELLY,

                Defendants.

-----------------------------------------------------------X

No. 11 Civ. 8168 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Dwayne Barnes, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 and the Rehabilitation Act, 29 U.S.C. § 794(a), against five employees of Green Haven Correctional Facility ("Green Haven"): Mary Abdullah, Diane Lane and A.M. Iceari, counselors in the Alcohol and Substance Abuse Treatment ("ASAT") program (collectively, the "ASAT Defendants"), and Dr. Bohpolee and B. Kelly, both medical personnel (collectively, the "Medical Defendants").[1]  Barnes alleges that Defendants violated his constitutional rights and the Rehabilitation Act by removing him from the ASAT program at Green Haven and disclosing his confidential medication information.  Defendants move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion to dismiss is granted but Barnes is granted leave to amend his complaint as to his Rehabilitation Act claim.

---

[1] Barnes is no longer incarcerated at Green Haven.

**I.     Background[2]**

    **A.     Factual Background**

Barnes has rheumatoid arthritis and took prescribed Tylenol with codeine for his condition at all times relevant to this action.  (Am. Compl. 7.)  As an inmate at Green Haven, Barnes participated in the ASAT program on several occasions.  Inmates receive good time credit by participating in the program.  (See id. at 10 (Grievance Investigation).)  During one period of participation in 2010, Barnes signed a form in which he agreed "not to use alcohol or other non-prescribed mind-altering substance[s] while [he is] in ASAT."  (Id. ¶ 8.)  Although Barnes received some positive evaluations from the ASAT Defendants, in December 2010, Abdullah reported that Barnes' "[m]edication for medical condition is interfering with treatment.  [Barnes] will seek medical assistance to cease medication as condition improves and then return to ASAT."  (Pl. Opp'n Ex. 8 at 13.)  According to Lane, Barnes was discharged from ASAT for "medicating with [a] prescription drug."  (Pl. Opp'n Ex. 7.)

Barnes returned to the ASAT program in February 2011.  (Pl. Opp'n Exs. 6 & 7.)  Upon his re-entry, Lane completed an "Assessment of Prior Participation" form, in which she wrote that "although inmate has returned to program, he remains on [T]ylenol with codeine.  Inmate will need to discuss his addiction with his provider and seek other options such as ibupro[f]en."  (Pl. Opp'n Ex. 7 at 1.)  She further wrote that Barnes "has not met program requirements.  He continues to use prescription meds.  It appears that inmate is self medicating."  (Id.)

---

[2] The following facts, which are taken from Barnes' amended complaint and opposition to Defendants' motion to dismiss, are accepted as true and all reasonable inferences are drawn in his favor for purposes of this motion.  See EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000).  Defendants argue that the Court should not consider new factual allegations that were raised for the first time in Barnes' opposition.  The Second Circuit, however, has recently reaffirmed that "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

Barnes alleges that, while he was in the ASAT program in early 2011, the Medical Defendants "willfully and deliberately disseminated confidential medical information to [] Abdullah, a non-medical staff, because [Barnes] refused to discontinue prescribed medication." (Am. Comp. ¶ 13.) He further alleges that the ASAT Defendants "willfully and deliberately disclosed the plaintiff's medical information during the group session." (Id. ¶ 11.) On April 10, 2011, Lane completed a discharge form stating that "inmate discharged unsatisfactory – medical-psych." (Pl. Opp'n Ex. 8 at 14.)

Following his discharge, Barnes filed a grievance in which he claimed that the ASAT Defendants "were constantly harass[ing] [him] about [his] [prescription] medication," even though "there [are] about 10-15 inmates who use heavy medication" in the program and he is "not on heavy medication." (Am. Compl. 8 (Grievance).) He further stated that counselors "used [his] medication issue to remove [him] from the program" and "even went [into his] medical record[s] without [his] cons[]ent," violating his "constitutional right[s]." (Id. at 9.) An investigation into his grievance concluded that he was "not discharged for poor performance," but that "[m]edications were having [an] effect on him which deterred his participation in ASAT." (Id. at 10.) The investigation further concluded that the "ASAT staff did not go into his medical record[s]." (Id.) The Acting Superintendent affirmed the determinations made by the investigation.[1] (Id. at 11 (Grievance Superintendent Ruling).) Barnes appealed this decision to the Central Office Review Committee ("CORC"), which found that Barnes "received an administrative discharge from ASAT due to a medical condition," and that "upon readmission[,] his prior time in ASAT will be reevaluated and credited as appropriate." (Pl. Opp'n Ex. 9 (CORC Ruling).)

---

[1] The Acting Superintendent also stated that Barnes was "discharged from the ASAT program for poor performance/participation," (Am. Compl. 11), which CORC clarified was a "typographical error," (Pl. Opp'n Ex. 9).

3

When Barnes subsequently entered the ASAT program at Eastern Correctional Facility on October 29, 2012, a counselor noted that Barnes had "obtained 4 months and 10 days successful evaluations from [Green Haven], resulting in him receiving prior credit." (Pl. Opp'n Ex. 6.) He successfully completed the program on December 12, 2012. (Id.)

B.     **Procedural Background**

On October 26, 2011, Barnes commenced this action asserting claims pursuant to § 1983 and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). On June 5, 2012, Judge Pauley, to whom this case was previously assigned, dismissed Barnes' HIPAA claims on the ground that there was no private right of action under HIPAA. (Dkt. No. 11.) Judge Pauley informed Barnes that he might seek leave to amend his complaint to include a constitutional claim relating to the disclosure of his confidential medical information, which "protects a right of privacy for medical conditions that are 'excruciatingly private and intimate in nature.'" (Id. at 3 (quoting Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63-64 (2d Cir. 2011)).

This matter was subsequently reassigned to my docket and on August 17, 2012, the Court granted Barnes' motion to amend his complaint. (Dkt. No. 16.) In his amended complaint, Barnes asserts that his removal from the ASAT program violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Eighth Amendment and the Rehabilitation Act. He also asserts that the disclosure of his medical information—by the Medical Defendants to the ASAT Defendants and by the ASAT Defendants to other prisoners—violates the Fourteenth Amendment. Furthermore, Barnes alleges that the ASAT Defendants "entered into an unlawful conspiracy to harass [him]," (Am. Compl. 7), which the Court

4

construes as asserting a conspiracy claim.[4]  Barnes brings his claims against all Defendants in their individual and official capacities, (Am. Compl. ¶ 3), and seeks to recover compensatory and punitive damages, (id. at 5).  Defendants now move to dismiss Barnes' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion is granted but Barnes will be given an opportunity to amend his complaint as to his Rehabilitation Act claim within thirty (30) days of this Order.

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Where a plaintiff is proceeding *pro se*, the complaint must be construed liberally and be interpreted "to raise the strongest arguments [it] suggest[s]."  Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Furthermore, although a court should generally refrain from considering matters outside the pleadings when reviewing a 12(b)(6) motion to dismiss, the Second Circuit has recently stated that "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).  Nonetheless, a pleading that offers "labels and conclusions" or only provides "naked

---

[4] The Court rejects Defendants' argument that Barnes raised his conspiracy claim for the first time in his opposition to their motion to dismiss.  In light of the liberal pleading standards afforded to *pro se* litigants, the Court finds that Barnes' reference to a conspiracy between the ASAT Defendants in his amended complaint is sufficient to assert a conspiracy claim.  See Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) ("[P]*ro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments they suggest.").  In any event, even if Barnes had asserted his conspiracy claim for the first time in his opposition, the Court nonetheless could have considered it.  See Pullman v. Alpha Media Pub., Inc., No. 12 Civ. 1924 (PAC)(SN), 2013 WL 1290409, at *6 (S.D.N.Y. Jan. 11, 2013).

assertion[s]" devoid of "further factual enhancement" is insufficient. Twombly, 550 U.S. at 555, 557.

## III. Discussion[5]

### A. Removal from the ASAT Program

#### 1. Due Process Claim

Defendants move to dismiss Barnes' Due Process claim on the ground that there is "no constitutionally protected liberty interest in eligibility for rehabilitative programs," including participation in the ASAT program. (Defs. Mem. 2-3.) Barnes responds that his "removal was done with malice and [] unlawfully, and doing so violated [his] [c]onstitutional [r]ights and caused undue hardships on himself and his family." (Pl. Opp'n 7.)

A plaintiff seeking to invoke the protection of the Fourteenth Amendment's Due Process Clause must allege that he possessed a life, liberty or property interest and that the defendants deprived him of that interest without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." Id. (internal quotation marks omitted).

Barnes' Fourteenth Amendment claim must be dismissed because he does not have a protected liberty interest in participating in rehabilitative programs, such as ASAT, or in earning good time credit from such participation. As several courts have held, inmates do not have a constitutional right to participate in prison programs, including alcohol and substance abuse treatment programs. See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (finding no due

---

[5] Defendants move to dismiss any § 1983 claims brought against them in their official capacities pursuant to the Eleventh Amendment. (Defs. Mem 8-9.) The Eleventh Amendment bars §§ 1983 and 1985 claims for damages brought against state officials in their official capacities. See Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002); Evans v. N.Y. State Dep't of Health, 189 F.3d 460, at *1 (2d Cir. 1999). Because all Defendants are employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), Barnes' §§ 1983 and 1985 claims against Defendants in their official capacities are barred and must therefore be dismissed.

6

process protection in eligibility for rehabilitative programs in the federal system); Paul v. Selsky, No. 02 Civ. 6347 (MAT), 2012 WL 2572771, at *9 (W.D.N.Y. June 29, 2012) (State inmates "do not have a constitutional right to participate in prison programs."); Brown v. Fischer, No. 10 Civ. 3830 (LTS)(JCF), 2011 WL 4056302, at *8 (S.D.N.Y. Aug. 17, 2011) ("[P]risoners have no constitutional right to discretionary good time release or to participation in prison programs that might expedite their release."). There is also no constitutional right to be "conditionally released before the expiration of a valid sentence." Swarthout v. Cooke, 131 S.Ct. 859, 862 (2011).

Moreover, Barnes has not been deprived of a state-created liberty interest. To establish such a due process violation, a prisoner must establish that the "confinement or restraint creates an 'atypical and significant hardship [in relation to the ordinary incidents of prison life],'" and that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Even assuming that Barnes has alleged that his removal from ASAT creates an "atypical and significant hardship"—which he has not done—Barnes' claim must fail under the second prong of this test. No liberty interest is recognized where state statutes or policies vest prison officials with the discretion to determine which inmates participate in prison programs or earn good time credits. See Abed v. Armstrong, 209 F.3d 63, 66-67 (2d Cir. 2000) ("Although inmates have a liberty interest in good time credits they have already earned, no such interest has been recognized in the opportunity to earn good time credit where . . . prison officials have discretion to determine whether an inmate . . . is eligible to earn good time credit.") (internal citations omitted); Fifield v. Eaton, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009) (where state law gives officials discretion, "an inmate has no constitutional right to . . . participation in prison

programs which might expedite release). Under New York law, corrections officials are vested with the discretion to determine which prisoners participate in such programs and whether merit time allowance will be granted when a prisoner completes the program. N.Y. Corr. Law § 803. Because the New York statute vests prison officials with discretion over programs such as ASAT, it does not create a liberty interest in participating in such programs. Barnes' Fourteenth Amendment claim must therefore be dismissed.

### 2.  Eighth Amendment Claim

Defendants also move to dismiss Barnes' Eight Amendment claim on the ground that removal from the ASAT program does not constitute cruel and unusual punishment. (Defs. Mem. 2.) "The Eighth Amendment prohibits the infliction of cruel and unusual punishments on those convicted of crimes, which includes punishments that 'involve the unnecessary and wanton infliction of pain.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). To demonstrate that conditions of confinement constitute cruel and unusual punishment, the prisoner must show that (1) "the conditions of his confinement result in unquestioned and serious deprivations of basic human needs," and (2) "the defendants imposed those conditions with deliberate indifference." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (internal quotation marks omitted). Barnes' removal from the ASAT program is not a punishment that involves the "unnecessary and wanton infliction of plain," nor does it deprive him of basic human needs. See Harrison v. Fischer, No. 08 Civ. 1327 (NAM)(DRH), 2010 WL 2653629, at *9 (N.D.N.Y. June 7, 2010) ("[T]he fact that Harris was enrolled in ASAT and then his participation was terminated and he was forced to serve his entire prison sentence is neither cruel nor unusual."); Murray v. Hulihan, 08 Civ. 912 (NAM)(ATB), 2010 WL 1235615, at *7 (N.D.N.Y. Mar. 17, 2010) ("[T]he alleged removal of plaintiff from the

8

ASAT program" is not a "punishment that involve[s] the unnecessary and wanton infliction of pain and plaintiff has stated no deprivation of basic human needs."). Defendants' motion to dismiss Barnes' Eighth Amendment claim is therefore granted.

### 3. Equal Protection Claim

Barnes alleges that "discharging [him] from ASAT on the basis of his . . . prescribed medication" violated the Equal Protection Clause of the Fourteenth Amendment. (Am. Compl. ¶ 18.) He contends that Defendants treated him differently from ten to fifteen prisoners taking "heavy" prescription medication because those prisoners were allowed to remain in ASAT while he was removed due to his use of prescription medication. (Id. at 8.) He further alleges that Defendants removed him from ASAT "arbitrarily and capriciously," subjecting him to unreasonable prejudice or disadvantage. (Id. ¶ 15.) Defendants ask the Court to dismiss the complaint in its entirety but fail to make any specific arguments regarding Barnes' Equal Protection claim. The Court nonetheless reviews this claim under a Rule 12(b)(6) standard and concludes that he fails to state an Equal Protection claim.

"Although the prototypical [E]qual [P]rotection claim involves discrimination against people based on their membership in a vulnerable class," courts "have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subject to invidious discrimination at the hands of government officials." Harlen Assocs. v. Inc. Vill. Of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). To state a "class-of-one" claim, a plaintiff must plead that: (i) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy;" and (ii) "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the

defendants acted on the basis of a mistake." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Id. at 59-60 (2d Cir. 2010) (quoting Clubside, Inc., 468 F.3d at 159). Moreover, following the Supreme Court's decision in Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), courts have required that a plaintiff also show that the "differential treatment resulted from [] non-discretionary state action." Martine's Serv. Ctr., Inc. v. Town of Wallkill, No. 07 Civ. 6327 (KTD), 2013 WL 1248628, at *3 (S.D.N.Y. Mar. 26, 2013) (citing Engquist, 553 U.S. at 604); Barber v. Perdue, No. 11 Civ. 127 (NAM)(DEP), 2012 WL 5996342, at *8 (N.D.N.Y. Nov. 9, 2012); Mangino v. Inc. Vill. of Patchogue, 739 F. Supp. 2d 205, 255 (E.D.N.Y. 2010).

Barnes' allegation that he was treated differently from the ten to fifteen prisoners in ASAT that were taking heavy medication does not satisfy the "extremely high degree of similarity" required for class-of-one claims. As Barnes himself alleges, unlike those prisoners, he is "not on heavy medication." (Am. Compl. 8.) "The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment." Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012). Because Barnes is not comparing himself to others who are sufficiently similar, his allegations leave open the possibility that some legitimate factor—such as side effects of his medication not suffered by those on different medication—could explain the disparate treatment. Barnes has therefore failed to satisfy the similarity element of a class-of-one claim.

Barnes' Equal Protection claim also fails because the alleged differential treatment— Barnes' removal from the ASAT program—resulted from state action that is within the state's

10

discretion. In Engquist, the Supreme Court distinguished between government action that turns on the "existence of a clear standard"—where a class-of-one claim is readily available—and state action that "involve[s] discretionary decision[-]making based on a vast array of subject, individualized assessment." Engquist, 553 U.S. at 601-03. The Engquist Court held that a class-of-one Equal Protection claim is not available in the public employee context, which inherently involves discretionary decision-making. Id. at 603. Since Engquist, however, the Second Circuit has held that "Engquist does not bar all class-of-one claims involving discretionary state action," and that there may be circumstances where it is properly applied outside of the employment context. Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 141 (2d Cir. 2010). In finding that the conduct at issue in the case before it—the Department of Health's issuance of permits to laboratories—was not a case in which Engquist applied, the Court relied on the distinction between the government "exercising the power to regulate or license"—which would not fall under Engquist—and the government "acting as proprietor"—which would fall under Engquist. Id. at 142 (quoting Engquist, 553 U.S. at 598.)

  The state action at issue here falls into the discretionary category of government conduct in which a class-of-one claim is not permitted under Engquist. As previously discussed, prison officials are vested with considerable discretion concerning inmates' participation in prison programs such as ASAT. Moreover, the conduct of prison officials in deciding which inmates may participate in such programs is more akin to the state acting as a proprietor or employer than as a regulator. Defendants were thus acting within their discretion when they removed Barnes from the ASAT program, and allowing a challenge based on the singling out of a particular inmate could "undermine the very discretion that such state officials are entrusted to exercise." See Engquist, 553 U.S. at 603; Barber v. Perdue, No. 11 Civ. 127 (NAM)(DEP), 2012 WL

5996342, at *8 (N.D.N.Y. Nov. 9, 2012) (finding no class-of-one claim where the challenged action, the BOP's assignment of inmates, vests the BOP with "considerable latitude" concerning such assignment). Accordingly, the Court finds that Barnes is unable to assert a class-of-one Equal Protection claim to challenge his removal from the ASAT program, and his claim is thus dismissed.

    **4.**    **Rehabilitation Act Claim**

Barnes alleges that Defendants violated the Rehabilitation Act by removing him from the ASAT program "on the basis of disability" because he was taking Tylenol with codeine for his rheumatoid arthritis. (Am. Compl. 1, 7, ¶ 18.) Defendants move to dismiss this claim on the grounds that Plaintiff has not alleged facts to show that he is a qualified individual with a disability and "there is no individual liability for damages under the Rehabilitation Act." (Defs. Mem. 5.)

To state a prima facie claim under the Rehabilitation Act, a plaintiff must allege: "(1) that [he] is a 'qualified individual' with a disability; (2) that [he] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). To satisfy the first element of this claim, the plaintiff must show that (1) "he suffers from a physical or mental impairment," (2) the "activity claimed to be impaired . . . constitutes a 'major life activity,'" and (3) his "impairment 'substantially limits' the major life activity previously identified." Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002) (quoting Bragdon v. Abbott, 524 U.S. 624, 631 (1998)).[6] An

---

[6] The Rehabilitation Act defines an individual with a disability by reference to the American with Disabilities Act. See 29 U.S.C. § 705(20)(B); see also Hargrove v. Vermon, 340 F.3d 27, 34-35 (2d Cir. 2003) (The standard for pleading disability is generally the same under § 504 of the Rehabilitation Act or Title II of the ADA.).

impairment need not "prevent or significantly or severely restrict" an individual from performing a major life activity to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ii). The plaintiff must also allege that, "with or without reasonable modifications," he "meets the essential eligibility requirements for . . . participation in programs or activities." 42 U.S.C. § 12131(2); Weixel, 287 F.3d at 147 (explaining that a plaintiff must allege that he is "otherwise qualified for the benefit that has been denied" to survive a motion to dismiss).

Barnes has failed to state a prima facie Rehabilitation Act claim. Although he alleges that he has rheumatoid arthritis, he does not explain how this condition limits any of his major life activities, as required to allege a disability for purposes of the Rehabilitation Act. See Weixel, 287 F.3d at 147; see also Hedges v. Town of Madison, 456 F. App'x 22, 24 (2d Cir. 2012) (plaintiff's allegation that she had Lyme's Disease, without further allegations about how the disease limited her daily activities, was insufficient to state a claim that she was disabled under the Rehabilitation Act). Moreover, Barnes' assertion that he "is a qualified individual," (Pl. Opp'n 11), is a legal conclusion that does not adequately allege that he was "otherwise qualified" to participate in the ASAT program. See § 12131(2); Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of the cause of action will not do."); Weixel, 287 F.3d at 147. Because Barnes has failed to sufficiently allege that he is a qualified individual with a disability under the Rehabilitation Act, the Court grants Defendants' motion to dismiss this claim. Barnes, however, is granted leave to file a second amended complaint within thirty (30) days of this Order to include allegations consistent with the standards articulated above.[7]

---

[7] Because the Court finds that Barnes has failed to adequately state a Rehabilitation Act claim, it need not reach Defendants' second argument that there is no individual liability for damages under the Act. For purposes of any future amendments, however, the Court notes that the Rehabilitation Act claims cannot be brought against Defendants in their individual capacities. See Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003) and Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001)). Whether individuals can be sued in their official capacities for damages under the Rehabilitation Act, on the other hand, is subject to dispute. A number of courts within this Circuit have

B.  **Disclosure of Medical Information**

Barnes next asserts that the disclosure of his medical information—by the Medical Defendants to the ASAT Defendants and by the ASAT Defendants to other prisoners—violated the Fourteenth Amendment. (Am. Compl. ¶¶ 11, 13.) Defendants move to dismiss this claim on the ground that Barnes' medical condition does not rise to the level of constitutional protection. (Defs. Mem. 4-5.)

The Constitution recognizes a "right to confidentiality," which protects an "'interest in avoiding disclosure of personal matters.'" Doe v. City of N.Y., 15 F.3d 264, 267 (2d Cir. 1994) (quoting Whalen v. Roe, 429 U.S. 589, 599 (1977)). This right includes the right to protect information "about the state of one's health." Id. In the context of prisoners, "prison officials can impinge" on a prisoner's "right to maintain the confidentiality of previously undisclosed medical information . . . only to the extent that their actions are 'reasonably related to legitimate penological interests.'" Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999).

Medical conditions that merit protection are "those that are 'excruciatingly private and intimate [in] nature' such as those 'likely to provoke an intense desire to preserve one's medical confidentiality.'" Matson, 631 F.3d at 64 (quoting Powell, 175 F.3d at 111). In making this inquiry, the court considers "whether revealing one's condition would expose a person 'not to understanding or compassion, but to discrimination and intolerance.'" Id. (quoting Doe, 15 F.3d at 267). The Second Circuit has thus recognized a right to confidentiality in an individual's HIV status, Doe, 15 F.3d at 266, as well as one's transsexualism, Powell, 175 F.3d at 111-13, but not in an individual's fibromyalgia. See Matson, 631 F.3d at 64 ("[T]here is no evidence in the

---

concluded that individuals cannot be sued in their official capacities for damages, while others have disagreed. See Cole v. Goord, No. 05 Civ. 2902 (GEL), 2009 WL 2601369, at *4 (S.D.N.Y. Aug. 25, 2009) (collecting cases and finding that individuals can be sued in their official capacities for damages). The Court need not address this issue at this time as it finds that Barnes has presently failed to state a cause of action under the Rehabilitation Act.

record that a social stigma is attached to Plaintiff's medical conditions [including fibromyalgia] in the same manner that one is attached to other medical conditions, such as AIDS."); see also Watson v. Wright, No. 08 Civ. 62, 2010 WL 55932, at *8 (N.D.N.Y. Jan. 5, 2010) (holding that Hepatitis C is not the kind of "highly sensitive" condition that gives rise to constitutional protection).

Applying this standard, the Court finds that the disclosure of Barnes' rheumatoid arthritis or his use of prescription pain medication is not protected under the Constitution. Although rheumatoid arthritis is a serious medical condition, it does not carry "a social stigma equivalent to HIV/AIDS or transsexualism," see Matson, 631 F.3d at 68, nor is such disclosure likely to expose him "to discrimination or intolerance." See Doe, 15 F.3d at 267. Although Barnes contends that "as a direct result of the disclosure of plaintiff's medical records, . . . he was ostracized by his peers in the ASAT group," (Pl. Opp'n 9), his medical condition and medication are not the same kind of intensely personal or stigmatizing conditions in which courts have recognized a constitutional right to confidentiality. Accordingly, Defendants' motion to dismiss Barnes' § 1983 claims for the disclosure of his medical information is granted.[8]

### C. Conspiracy

Lastly, Barnes alleges that the ASAT Defendants "entered into an unlawful conspiracy to harass [him]." (Am. Compl. 7.) He further contends that "Abdullah entered into an unlawful conspiracy with ASAT Counselors Iceari and Lane to harass him into discontinuing his medication, ostracizing plaintiff from his peers within the group, causing und[ue] prejudice within" Green Haven. (Pl. Opp'n 2-3.) Barnes also alleges that Defendants "entered into a conspiracy with medical officials to obtain private medical information, and then used that

---

[8] Because the Court agrees with Defendants that Barnes does not have a constitutional interest in the confidentiality of medical information about his rheumatoid arthritis or Tylenol prescription, it need not reach Defendants' arguments that Barnes failed to fully exhaust that claim on appeal. (Defs. Mem. 6-8.)

information unlawfully and contrary to the ASAT [p]rograms own guidelines to discharge [him] from the program on negative terms." (Id. at 12.) Defendants argue that this claim must be dismissed because Barnes' allegations of conspiracy are vague and fail to satisfy the elements of § 1985(3). (Defs. Reply 3-5.) Because Barnes does not specify whether he is bringing a conspiracy claim pursuant to § 1983 or 42 U.S.C. § 1985(3), the Court considers whether he has stated a claim under either statute.

To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) "to act in concert to inflict unconstitutional injury," and (3) "an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). To state a claim under § 1985(3), the plaintiff must also show that the conspiracy was motivated by some "class-based, invidious, discriminatory animus." CineSK8 Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Id. (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

As to any § 1983 conspiracy claim, this claim necessarily fails because the Court has found that Barnes has failed to state a claim as to the underlying Fourteenth and Eighth Amendment violations. See Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009). Moreover, as to any § 1985(3) claim he might be asserting, this claim also fails because the Court has found that Barnes has failed to state an Equal Protection claim and therefore cannot satisfy the animus

element of a § 1985(3) action. Accordingly, Defendants' motion to dismiss Barnes' conspiracy claim is granted.[9]

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss with prejudice as to the following claims: (1) Barnes' Due Process claim arising out of his removal from the ASAT program; (2) his Eighth Amendment claim arising out of his removal from the ASAT program; (3) his Equal Protection claim; (4) his Due Process claim relating to the disclosure of his medical information; and (4) his conspiracy claims.

As to Barnes' Rehabilitation Act claim, the Court grants Defendants' motion to dismiss without prejudice. Barnes is granted leave to submit a second amended complaint within thirty (30) days asserting claims under the Rehabilitation Act in a manner consistent with this decision. Barnes is reminded that any Rehabilitation Act claim may only be brought against Defendants in their official capacities, although the Court has not yet ruled on whether such claims are permissible under the Eleventh Amendment.

If Plaintiff fails to submit a second amended complaint within the time allowed, and cannot show good cause to excuse such failure, the Rehabilitation Act claim will be dismissed with prejudice. If Plaintiff submits a second amended complaint that includes claims that go beyond scope of the permitted amendment, such claims will be dismissed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

---

[9] In addition to the arguments discussed herein, Defendants also move to dismiss Barnes' claims under the doctrine of qualified immunity. Because the Court finds that Barnes has failed to state a claim for violations of his constitutional or statutory rights, it need not consider whether the doctrine of qualified immunity protects Defendants from liability.

The Clerk of Court is respectfully directed to close the motion at Docket Number 25.

SO ORDERED.

Dated: July 22, 2013
New York, New York

Ronnie Abrams
United States District Judge